
FILED
DISTRICT COURT OF GUAM
JUN 14 2023
JEANNE G. QUINATA
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of Guam

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
126 A Sergeant David Camacho Street, Tamuning, Guam )
96913 (See Attachment A) )

Case No. MJ-23-00063

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

126 A Sergeant David Camacho Street, Tamuning, Guam 96913. Property further described in Attachment A.

located in the _____ District of ____Guam____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B which is incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b) and 856 | Distribution of Methamphetamine |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

MATTHEW G. CALVO, DEA Task Force Officer
*Printed name and title*
BKP

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 2/14/23

*Judge's signature*

City and state: Hagatna, Guam     HON. MICHAEL J. BORDALLO, Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Matthew G. Calvo, being duly sworn, depose and say as follows:

## A. Background of Affiant

1. I, Matthew G. Calvo, being duly sworn, state that I am a Judiciary of Guam Probation Officer Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I have been a Probation Officer with the Judiciary of Guam since 2006. I am currently assigned to the DEA Guam Resident Office (GRO), where I have been assigned since October 2021. I have completed the Criminal Justice Academy with the Guam Community College in 2016. As a Probation Officer, I was assigned to the Adult Drug Unit from 2006 through 2009 and then again from 2017 through 2019, where I have investigated narcotics related cases. Through my training and experience I have gained knowledge and experience in the identification, preservation, processing and confiscation of evidence as well as other investigative aspects relative to these cases and other crimes related to Title 9 of the Guam Code Annotated. In October of 2021, I was reassigned to my current position as a TFO with the DEA Task Force.

2. My duties as a TFO with DEA include investigating criminal violations of federal laws including Title 21, United States Code, Sections 841(a)(1), 843(b), and 856, which includes the detection, identification, and apprehension of those individuals involved in narcotics trafficking offenses.

3. As a TFO, I have participated in investigations of criminal violations of the Federal Controlled Substances Act. I have also participated in undercover investigations involving the purchase of controlled substance, assisted in the execution of local and federal search warrants relating to controlled substances and have conducted numerous surveillance

1

and controlled deliveries in connection with narcotic investigations.

4. I am familiar with the operation of illegal drug trafficking organizations (DTOs) in the United States and DTOs with foreign nexus. I know from my training, experience and discussions with other law enforcement officers that importers and distributors of controlled substances often keep ledger books, banks records, telephone books, receipts, airline tickets, drug customer lists, photos, audio/video recordings, items which communicate information, and other papers that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substance and proceeds derived from said sales. Often times, they keep such records and information on their cellular phones, tablets, laptops, desktop computers, storage devices, other electronic device, in their residences, and in safes.

5. I am aware that narcotics traffickers conduct drug related meetings and consummate transactions of narcotics in the privacy of motor vehicles, hotel rooms and residences, to communicate instructions, plans and intentions to their criminal associates; transfer or receive narcotics and money; and prepare and package narcotics for distribution. I am aware that evidence of these activities (i.e., packaging materials, weight scales, etc.) are often found following searches of these locations.

6. I am aware that people who distribute illegal narcotics often maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business. These individuals conceal caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities, in their residences, offices, garages, storage buildings, automobiles, and safety deposit boxes.

7. I am aware that individuals involved in the distribution of illegal narcotics very often place assets in names other than their own to avoid detection of these assets by government agents. Even though those assets are in other person's names, the drug dealers continue to use those assets and exercise dominion and control over them. These individuals normally conduct a "cash and carry" type operation which can generate large volumes of currency. It is common for these persons to establish one or more bank accounts in which the currency is deposited. Records of these accounts normally consists of checking/saving accounts registers, checking/saving account statements, checking/savings account deposit slips, canceled checks, wire transfers, money orders, local, state and federal income tax reports, and other financial documents that identify the location of assets which have been obtained by illegal drug sales. Furthermore, these financial documents and records establish legitimate income and net worth, which assist in providing that assets in excess of legitimate sources are derived from drug sales and further prove intent to distribute drugs. Courts have recognized that unexplained income is probative evidence of crimes motivated by greed, in particular, drug trafficking.

8. I know that individuals who distribute illegal narcotics often travel or drive, sometimes great distances, to manage the production and/or distribution of illegal drugs.

9. I know that those involved in the distribution of illegal narcotics often use drug proceeds to purchase, precious metals, jewelry, and other items of value as trophies. These individuals conceal and maintain these items, in their residences, offices, garages, storage buildings, automobiles, and safety deposit boxes. They often times use criminal associates' residences, and automobiles to conceal these items.

10. Based on my training, experience, and discussions with other law enforcement

3

officers, I am aware that criminals often use cellular phones to communicate instructions, plans, and intentions to their criminal associates and to report on the progress of their criminal activities. I am aware that evidence of these instructions, plans, intention, reports and general discussions of criminal activity are sent or received in the form of text messages, incoming and outgoing call histories or voice messages left in personal voice mail systems. I am familiar in the methods in which text messages are sent and received via third party phone applications, most commonly referred to as "Apps" are widely used.

11. The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators. Because the purpose of this affidavit is to set forth probable cause, your affiant has not included each and every fact known to the affiant in connection with this investigation.

B. **PURPOSE OF AFFIDAVIT**

12. This affidavit is submitted in support of a request for a search warrant for **126 A Sergeant David Camacho Street, Tamuning, Guam 96913**, as further described in Attachment A. I believe evidence and instrumentalities, more particularly described in Attachment B, which is attached hereto and incorporated by reference herein, will be found during the search of the property.

C. **FACTS ESTABLISHING PROBABLE CAUSE**

13. On April 19, 2023, investigators with the Drug Enforcement Administration-Guam Resident Office (DEA-GRO) successfully conducted a first (1st) Controlled Buy/Walk operation on target of investigation Susan MATA ("MATA"). Investigators used a DEA Confidential Source (CS) as well as DEA Official Authorized Funds (OAF) to successfully purchase Methamphetamine from MATA.

4

14. At the direction of investigators, the DEA CS placed a Controlled Call to MATA, using the FaceBook Messenger Application, to coordinate the purchase of approximately one (1) ounce of methamphetamine for approximately two thousand two hundred dollars ($2,200.00) in U.S. Currency. MATA agreed and scheduled to meet the DEA CS to consummate the deal on the same date, April 19, 2023, within the Guam Premier Outlets parking lot nearest to the Wendy's fast food restaurant in Tamuning, Guam. The DEA CS was outfitted with electronic surveillance and monitoring equipment that recorded audio and video of the deal.

15. A team of DEA investigators established surveillance positions in and around the designated meet location prior to the deal. The DEA CS, accompanied by a DEA Undercover (UC) Officer, arrived at the designated meet location at which time MATA too arrived in a Black Toyota Camry bearing Guam License Plate: UM 2253.

16. The DEA CS got into MATA's vehicle, as witnessed by DEA investigators, at which time the deal was consummated using DEA OAF. The DEA CS, with the purchased methamphetamine, got back into the DEA UC vehicle and returned to the DEA-GRO for debrief and processing of evidence. DEA investigators seized approximately 29 grams of methamphetamine from the DEA CS. A field test was conducted and yielded presumptive positive results for the presence of methamphetamine.

17. The remaining investigators continued to surveil MATA as she drove throughout the village of Tamuning subsequently arriving at a green in color single-story dwelling along Sergeant David Camacho Street. The residence appeared to be a duplex but was later identified through further investigation to be two (2) separate residences -126 and 126 A Sergeant David Camacho Street. If facing the residence, 126 is on the right side and 126

5

A is on the left side. Law enforcement confirmed with utility records as well as a Lease Agreement provided to the utility agency that MATA resides at **126 A Sergeant David Camacho Street, Tamuning, Guam 96913.**.

18. On April 25, 2023, DEA Investigators conducted surveillance of **126 A Sergeant David Camacho Street, Tamuning, Guam 96913** and witnessed MATA arrive in the Black Toyota Camry bearing Guam License Plate: UM 2253. MATA exited the vehicle and proceeded into the right portion of the single-story dwelling.

19. On May 3, 2023, investigators with the DEA-GRO successfully conducted a second (2nd) Controlled Buy/Walk operation on MATA. Investigators used a DEA CS as well as DEA OAF to successfully purchase methamphetamine from MATA.

20. At the direction of investigators, the DEA CS placed a Controlled Call to MATA, using the FaceBook Messenger Application, to coordinate the purchase of approximately two (2) ounces of methamphetamine for approximately four thousand four hundred dollars ($4,400.00). MATA agreed and scheduled to meet the DEA CS to consummate the deal on the same date, May 3, 2023, within the Guam Premier Outlet parking lot. MATA later called the DEA CS, using the FaceBook Messenger application, and changed the meet location to the Pieology restaurant parking lot in Tamuning, Guam. The DEA CS was outfitted with electronic surveillance and monitoring equipment that recorded audio and video of the deal.

21. A team of DEA investigators established surveillance positions in and around the designated meet location prior to the deal. The DEA CS, accompanied by a DEA UC Officer, arrived at the designated meet location at which time MATA too arrived in the same Black Toyota Camry bearing Guam License Plate: UM 2253 previously used by MATA.

6

22. The DEA CS got into MATA's vehicle, as witnessed by DEA investigators, at which time the deal was consummated using DEA OAF. The DEA CS, with the purchased methamphetamine, got back into the DEA UC vehicle and returned to the DEA-GRO for debrief and processing of evidence. The DEA CS informed investigators that MATA sold the methamphetamine for four thousand three hundred eighty dollars ($4,380.00), approximately twenty dollars ($20.00) less than the negotiated price of four thousand four hundred dollars ($4,400.00). DEA investigators seized approximately 57.5 grams of methamphetamine from the DEA CS. A field test was conducted and yielded presumptive positive results for the presence of methamphetamine

23. The remaining investigators continued to surveil MATA as she proceeded to the First Hawaiian Bank in Tamuning and Coast360 Federal Credit Union in Maite. At both locations DEA investigators witnessed MATA use the drive-up teller services to make a transaction.

24. On May 3, 2023, not long after the deal with MATA was consummated, DEA investigators approached Coast360 Federal Credit Union and were able to confirm that MATA did make a transaction depositing into two (2) accounts a total of approximately two thousand dollars ($2,000.00) – one thousand dollars ($1,000.00) deposit into a savings account and one thousand dollars ($1,000.00) deposit into a checking account. A large portion of the money deposited by MATA was verified to be the DEA OAF given to the CS prior to the meet. DEA investigators were able to take photos of the DEA OAF deposited by MATA.

25. On June 8, 2023, DEA investigators continued surveillance on **126 A Sergeant David Camacho Street, Tamuning, Guam 96913** and observed as the Black Toyota Camry bearing Guam License Plate UM 2265 arrived at the target residence, MATA exited the

7

Case 1:23-mj-00063   Document 1-1   Filed 06/14/23   Page 8 of 13

driver's side and proceeded into the left unit.

26. On June 14, 2023, DEA investigators contacted the owner/landlord who confirmed that MATA is renting **126 A Sergeant David Camacho Street, Tamuning, Guam 96913**. The owner/landlord further confirmed that **126 A Sergeant David Camacho Street, Tamuning, Guam 96913** is the unit located on the left side.

27. WHEREFORE, I believe that based on training, experience, and conversations with other Law Enforcement Officers, I know that narcotics traffickers will many times keep evidence of narcotics trafficking inside their homes, vehicles, locked boxes/safes, electronic devices to include cell phones, buried in/around their homes, drug traffickers often times possess firearms either on their person, in the vehicle, or in their homes in order to protect their "stash" of drugs. Based on the above, I believe there is probable cause to believe that the following articles are or will be present in due course at the subject premises, **126 A Sergeant David Camacho Street, Tamuning, Guam 96913**:

    a. Controlled substance, in particular, but not limited to, Methamphetamine, processing and distribution equipment such as scales, cutting devices cutting materials, packaging materials, firearms and ammunitions.

    b. Items of personal property which tend to identify the person(s) occupancy, control or ownership of the premises that is the subject of this warrant, including but not limited to cancelled mail, deeds, leases, rental agreements, utility and telephone bills, statements, and identification documents.

    c. Ledger books, banks records, telephone records, receipts, airline tickets, drug customer lists, drug paraphernalia, photos and other paper that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substances, precious

metals, jewelry, automobile titles, stereo and electronics equipment and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting large sums of money acquired and foreign banks documents and/or financial institutions and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. Paperwork to include, but are not limited to, commercial airlines, commercial, ocean-going vessels, private automobiles, government and contract mail services. Access to locked safes, or locked storage containers, vehicles on premise and curtilage.

    d.  U.S. Currency, proceeds of drug transactions, and DEA Official Authorized Funds.

**D.** **SEALING REQUEST**

  28. Because this is an ongoing investigation, it is requested that this search warrant application and the accompanying affidavit, and attachments be sealed until further order by the Court.

**E.** **CONCLUSION**

  29. Based on the foregoing, I respectfully submit that there is probable cause to believe that on the property described in Attachment A, there is evidence and instrumentalities of criminal offenses against the United States, to wit: violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 856.

  **FURTHER AFFIANT SAYETH NAUGHT.**

              _____
              MATTHEW G. CALVO
              Task Force Officer
              Drug Enforcement Administration

9

Case 1:23-mj-00063   Document 1-1   Filed 06/14/23   Page 10 of 13

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

### 126 A Sergeant David Camacho Street, Tamuning, Guam 96913
(Unit on left-side of green, one-story structure)



10



11

# ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

1. Controlled substances, in particular, but not limited to, methamphetamine, methamphetamine processing and distribution equipment such as scales, cutting devices cutting materials, packaging materials, firearms and ammunition.

2. Items of personal property which tend to identify the person(s) occupancy, control or ownership of the premise that is the subject of this warrant, including but not limited to cancelled mail, deeds, leases, rental agreements, utility and telephone bills, statements, and identification documents.

3. Ledger books, bank records, telephone records, receipts, airline tickets, drug customer lists, drug paraphernalia, photos and other papers that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substance, precious metals, jewelry, automobile titles, stereo and electronics equipment and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired and foreign banks documents and/or financial institutions and their attendant services, securities, cashier's checks. Money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. Paperwork to include, but are not limited to, commercial airlines, commercial, ocean-going vessels, private automobiles, government and contract mail services. Access to locked safes, or locked storage containers, vehicles on premise and curtilage.

4. Cellular phones and electronic devices,

5. United States Currency

6. DEA Official Authorized Funds.

12